**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**UTICA DIVISION**

| | |
|---|---|
| DEVON FINNEY, Individually and For All Others Similarly Situated,<br><br>    v.<br><br>ERSG US HOLDINGS INC. | Case No. <u>6:24-cv-1238 (</u>GTS/MJK)<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action<br>FLSA Collective Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Devon Finney (Finney) brings this class and collective action to recover unpaid overtime wages, untimely paid wages, and other damages from ERSG US Holdings Inc. (ERSG).

2.     ERSG is a staffing company that employs "manual workers," as contemplated by New York Labor Law (NYLL) § 191, in New York.

3.     ERSG employs numerous "manual workers" as Quality Control Technicians and similar jobs.

4.     ERSG employed Finney as a Quality Control Technician, including in New York.

5.     Despite being manual workers, ERSG fails to pay Finney and the other Manual Workers (defined below) their wages within seven calendar days after the end of the week in which they earned such wages, as required by NYLL § 191.

6.     Instead, ERSG pays Finney and other Manual Workers on a bi-weekly basis.

7.     ERSG thus fails to timely pay earned wages to Finney and other Manual Workers.

8.     Finney and the other Manual Workers are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

9.     Accordingly, ERSG's failure to timely pay wages owed to Finney and other Manual Workers constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies,*

*Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC,* 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

10.     Additionally, ERSG does not pay Finney and the other Manual Workers for all the hours they work.

11.     Instead, ERSG automatically deducts 30 minutes a day from Finney's and Manual Workers' hours for so-called "meal breaks" (ERSG's "auto-deduction policy").

12.     They are thus not paid for this time.

13.     But ERSG fails to provide them with *bona fide* meal breaks.

14.     And they do not actually receive *bona fide* meal breaks.

15.     Instead, ERSG requires Finney and the other Manual Workers to remain on-duty and perform compensable work during their unpaid "meal breaks."

16.     ERSG's auto-deduction policy and time coding policy violate the Fair Labor Standards Act (FLSA) and NYLL by depriving Finney and the other Manual Workers of overtime compensation for hours worked in excess of 40 in a workweek.

17.     In addition to failing to pay Finney and the other Manual Workers for all their hours worked, ERSG also fails to pay them overtime at the proper overtime rate.

18.     Instead, ERSG pays Finney and the other Manual Workers "per diems."

19.     But ERSG does not pay these per diems to Finney and the other Manual Workers on "weather out" days on the theory the Manual Workers are not supporting project work that day(s).

20.     ERSG knows these per diems must be, but are not, included in the Manual Workers' "regular rates" of pay for overtime purposes (ERSG's "per diem pay scheme").

21.     ERSG's per diem pay scheme violates the FLSA and NYLL by depriving Finney and the other Manual Workers of overtime at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for hours worked after 40 in a week.

**JURISDICTION & VENUE**

22.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

23.    This Court also has supplemental jurisdiction over the state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

24.    And this Court has original subject matter jurisdiction over this matter pursuant to the jurisdictional provisions of the Class Action Fairness Act. 28 U.S.C. § 1332(d) ("CAFA").

25.    Specifically, upon information and belief:

a. the matter in controversy is believed to exceed $5,000,000;

b. at least one member of Finney's proposed class and ERSG are citizens of different states (Finney is a citizen of Texas and ERSG is a citizen of Delaware and Florida); and

c. Finney's proposed classes exceed 100 members.

26.    This Court has personal jurisdiction over ERSG because ERSG has conducted substantial business in New York, including employing Finney in New York.

27.    Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District. 28 U.S.C. § 1391(b)(2).

28.    Specifically, ERSG employed Finney subject to its auto-deduction policy and bi-weekly pay scheme in and around Otsego County, which is in this District and Division.

**PARTIES**

29.    ERSG employed Finney as a Quality Control Technician.

30.    Throughout his employment, ERSG classified Finney as non-exempt and paid him by the hour.

31.    ERSG paid Finney on a bi-weekly basis.

32.    Throughout his employment, ERSG subjected Finney to its auto-deduction policy.

33.    But throughout his employment, ERSG failed to provide Finney *bona fide* uninterrupted meal breaks.

34.    And Finney did not actually receive *bona fide* uninterrupted meal breaks.

35.    And ERSG paid Finney and the other Manual Workers a per diem that it failed to include in their regular rate of pay for the purpose of calculating overtime compensation.

36.    Finney brings this class and collective action on behalf of himself and other similarly situated Manual Workers whom ERSG subjected to its auto-deduction policy, per diem pay scheme, and/or failed to timely pay their earned wages.

37.    The putative FLSA collective of similarly situated employees is defined as:

> **All employees who worked for ERSG in New York as hourly Quality Control Technicians and similar jobs who were subject to ERSG's auto deduction policy. (the "FLSA Collective Members").**

38.    The putative class of similarly situated employees is defined as:

> **All employees who worked for ERSG in New York as hourly Quality Control Technicians and similar jobs who were paid on a bi-weekly basis during the past 6 years and 228 days[1] (the "New York Class Members").**

39.    The FLSA Collective Members and New York Class Members are collectively referred to as the "Manual Workers."

40.    The Manual Workers can be readily ascertained from ERSG's business and personnel records.

41.    ERSG is a Delaware corporation headquartered in Orlando, Florida.

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

42.     ERSG may be served through its registered agent: **Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, DE 19904.**

## COVERAGE UNDER THE FLSA

43.     At all relevant times, ERSG has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

44.     At all relevant times, ERSG has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r)(2)(A).

45.     At all relevant times, ERSG has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because ERSG is engaged in providing employee staffing services to the energy industry. 29 U.S.C. § 203(s)(1)(B).

46.     At all relevant times, ERSG has had an annual gross volume of sales made or business done of at least $1,000,000.

47.     At all relevant times, ERSG has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cellphones, computers, hand tools, personal protective equipment, etc. – that have been moved in or produced for commerce.

48.     At all relevant times, Finney and the other FLSA Collective Members have been ERSG's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e)(1).

49.     At all relevant times, Finney and the other FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

50.     ERSG deducts 30 minutes a shift from Finney's and the other FLSA Collective Members' wages for "meal breaks," even when they do not actually receive *bona fide* uninterrupted meal breaks.

51.    As a result, ERSG fails to pay Finney and the FLSA Collective Members for hours worked.

52.    ERSG's auto-deduction policy deprives Finney and the other FLSA Collective of overtime compensation during workweeks they work over 40 hours. 29 U.S.C. § 207(a) & (e).

53.    ERSG also paid the Manual Workers per diems that ERSG excluded from their regular rates of pay for overtime purposes.

54.    As a result, ERSG failed to pay Finney and the other Manual Workers at least 1.5 times their regular rates of pay – based on all remuneration – for hours worked in excess of 40 a workweek.

55.    As a result, ERSG fails to pay Finney and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on all remuneration – in willful violation of the FLSA.

## FACTS

56.    ERSG bills itself as an "international leader in recruitment and staffing services to the global energy, renewables, engineering, power & built markets, providing white & blue collar workers to some of the most reputable global brands."[2]

57.    To meet its business objectives, ERSG employs workers like Finney and the other Manual Workers.

58.    While exact job duties and precise locations worked may differ, Finney and the other Manual Workers are all subjected to ERSG's same or similar policies, while performing similar work.

59.    For example, Finney worked for ERSG as a Quality Control Technician from approximately August 2021 until December 2022 in New York and Iowa.

---

[2] https://www.ersg-global.com/en-US/about-us?source=google.com (last visited October 7, 2024).

60.     ERSG employed Finney in Otsego County, New York from approximately April 2021 to October 2021.

61.     Throughout his employment, ERSG classified Finney as non-exempt and paid him by the hour.

62.     ERSG paid Finney approximately $31 an hour.

63.     And ERSG paid Finney a "per diem" of approximately $120 a day.

64.     Finney worked approximately 12 hours a day for 6 days a week (72 hours a workweek).

65.     Finney typically worked a rotating schedule of 6 weeks on and one week off.

66.     Throughout his employment, over 25% of Finney's duties have been physical tasks, including but not limited to: walking from turbine to turbine, climbing wind turbines carrying tools and testing equipment, inspecting wind turbines, troubleshooting issues that he encountered on the turbines, and standing or otherwise being "on his feet" for extended periods of time.

67.     Despite regularly spending more than 25% of his shifts performing physical tasks, ERSG failed to timely pay Finney his earned wages.

68.     Instead, ERSG paid Finney on a bi-weekly basis.

69.     As a result of ERSG's untimely wage payments, ERSG underpaid Finney for the first seven days of each bi-weekly pay period throughout his employment.

70.     Indeed, Finney's employment agreement with ERSG makes clear that ERSG paid him on a bi-weekly basis:

Pay Rate:               $31.00 per regular hour billable to the Client
                        $46.50 per worked overtime hours billable to the Client

All hours worked must be validated and approved by the client through a time recording system.  It is your responsibility to ensure your hours are entered correctly into this system and submitted and approved in time for the processing and payroll deadlines.  In the event that your approved hours are received after the cut off for payroll, your hours worked will be paid on the next payroll.  Payroll is run every two weeks.

71.     Thus, ERSG has failed to timely pay Finney his earned wages not later than seven days after he earned such wages, as required by NYLL § 191(1)(a), for every other week he worked in New York, from approximately April 2022 through October 2022.

72.     As a result of ERSG's untimely wage payments, ERSG has underpaid Finney every other week across this entire period.

73.     ERSG's underpayments deny Finney the time-value of his earned wages. *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, --- F. Supp. 3d. ---, 2023 WL 4457911, at *7 (W.D.N.Y. July 11, 2023) (holding an employee's "lost time value of his wages" from being paid late was an injury in fact).

74.     For example, Finney is unable to invest, save, or purchase utilizing the wages he earned during the first seven days of each bi-weekly pay period throughout his employment.

75.     ERSG subjects the other Manual Workers to the same policies it imposes on Finney.

76.     Indeed, the other Manual Workers perform the same or similar physical job duties as Finney.

77.     Over 25% of the other Manual Workers' daily job duties are the same or similar physical tasks that Finney performs.

78.     But like Finney, despite regularly spending more than 25% of their shift performing these physical tasks, ERSG fails to timely pay its other Manual Workers their earned wages.

79.     Instead, like Finney, ERSG pays the other Manual Workers on a bi-weekly basis.

80.     As a result of its untimely wage payments, ERSG underpays the other Manual Workers for the first seven days of each bi-weekly pay period.

81.     Thus, like Finney, ERSG pays the Manual Workers on an untimely basis in willful violation of the NYLL.

82.     And ERSG's underpayments similarly deny the other Manual Workers the time-value of their money, as they are unable to invest, save, or purchase utilizing the wages they earned and are owed during each underpaid workweek.

83.     ERSG pays the other Manual Workers by the hour.

84.     And like Finney, the other Manual Workers typically work approximately 72 hours a workweek.

85.     And ERSG subjects Finney and the other Manual Workers to its auto-deduction policy, deducting 30 minutes each shift for so called "meal breaks."

86.     ERSG deducts this 30 minutes regardless of whether they actually receive a *bona fide* uninterrupted meal break.

87.     ERSG does not actually provide Finney and the other Manual Workers with *bona fide* uninterrupted meal breaks.

88.     Finney and the other Manual Workers do not actually receive *bona fide* uninterrupted meal breaks.

89.     Instead, ERSG requires Finney and the other Manual Workers to remain on duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

90.     Indeed, because of these work interruptions, Finney and the other Manual Workers are not free to engage in personal activities during their unpaid "meal breaks."

91.     Rather, during their unpaid "meal breaks," they are forced to substantially perform their regular duties and responsibilities.

92.     Thus, Finney and the other Manual Workers routinely spend their unpaid "meal breaks" performing work for ERSG's – not their own – predominant benefit.

93.     This unpaid time is compensable under the FLSA and NYLL because ERSG knew, or should have known, that (1) Finney and the other Manual Workers perform unpaid work during their

"meal breaks," (2) they are interrupted or subject to interruption with work duties during any attempted meal break, (3) they are not completely relieved of all duties during "meal breaks," (4) they entirely skip "meal breaks" due to work demands, (5) the "meal breaks" are less than 30 consecutive minutes, (6) they are not free to engage in personal activities during their meal breaks because of interruptions, (7) they remain on ERSG's premises, and/or (8) they predominantly spend unpaid "meal breaks" performing their regular work duties for ERSG's predominant benefit.

94.     ERSG fails to exercise its duty to ensure Finney and the other Manual Workers are not performing work that ERSG does not want performed during their unpaid "meal breaks."

95.     Despite accepting the benefits, ERSG does not pay Finney and the other Manual Workers for the compensable work they perform during their "meal breaks."

96.     Thus, under ERSG's auto-deduction policy, Finney and the other Manual Workers are denied overtime compensation for on-duty "meal breaks" in workweeks they work over 40 hours.

97.     ERSG knows Finney and the other Manual Workers routinely perform work "off the clock" during their unpaid "meal breaks" because ERSG expects and requires them to do so.

98.     But ERSG does not pay Finney and the other Manual Workers for this routine "off the clock" work, including hours worked in excess of 40 a workweek, in willful violation of the FLSA and New York law.

99.     Finally, ERSG also subjects Finney and the other Manual Workers to its per diem pay scheme.

100.     Specifically, ERSG pays Finney and the other Manual Workers non-discretionary per diems.

101.     But ERSG fails to pay Finney and the other Manual Workers these per diems on days they cannot work due to inclement weather.

102.    ERSG knows these per diems should be, but are not, included in Finney's and the other Manual Workers' regular rates of pay for the purpose of calculating overtime.

103.    As a result, ERSG fails to pay Finney and the other Manual Workers overtime at a rate not less than 1.5 times their regular rates of pay – based on all remuneration – for hours worked in excess of 40 a week, in violation of the FLSA and NYLL.

**ERSG'S VIOLATIONS WERE WILLFUL AND DONE IN
RECKLESS DISREGARD OF THE FLSA AND NYLL**

104.    ERSG knows it is subject to the FLSA, including its overtime provisions.

105.    ERSG knows it is subject to the NYLL and its supporting regulations, including the overtime provisions and timely payment of wages provisions.

106.    ERSG knows the NYLL required it to pay manual workers their lawfully earned wages not later than seven calendar days after the end of the week in which such wages are earned.

107.    ERSG knows Finney and the other Manual Workers regularly spend more than 25% of their shifts performing physical tasks.

108.    In other words, ERSG knows, should have known, or recklessly disregards whether Finney and the other Manual Workers were "manual workers" entitled to weekly pay under the NYLL.

109.    Nonetheless, ERSG does not pay Finney and the other Manual Workers their lawfully earned wages within seven calendar days after the end of the week in which they earned such wages.

110.    Instead, ERSG pays Finney and its other Manual Workers on a bi-weekly basis.

111.    In other words, ERSG knows, should have known, or recklessly disregards whether it failed to timely pay Finney and the other Manual Workers their lawfully earned wages in violation of the NYLL.

112.    ERSG's failure to timely pay Finney and the other Manual Workers their lawfully earned wages is neither reasonable, nor is ERSG's decision to pay these manual workers on a bi-weekly basis made in good faith.

113.    Further, ERSG knew Finney and the other Manual Workers were its non-exempt employees entitled to overtime because ERSG classified and paid them as such.

114.    ERSG knew Finney and the other Manual Workers are its hourly employees because ERSG pays them by the hour.

115.    ERSG knew Finney and the other Manual Workers worked more than 40 hours in at least one workweek during the relevant period because ERSG required them to record their "on the clock" hours worked using its timeclock system.

116.    ERSG knew the FLSA and NYLL require it to pay Finney and the other Manual Workers for all hours they perform compensable work.

117.    ERSG knew the FLSA and NYLL require it to pay Finney and the other Manual Workers overtime at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for all hours worked in excess of 40 in a workweek.

118.    ERSG knew it failed to provide Finney and the other Manual Workers with *bona fide* uninterrupted meal breaks.

119.    ERSG knew Finney and the other Manual Workers regularly work during their unpaid "meal breaks" because ERSG expects and requires them to.

120.    ERSG knew Finney and the Manual Workers regularly spend their "meal breaks" substantially performing their normal job duties for ERSG's predominant benefit.

121.    ERSG knew Finney and the other Manual Workers perform compensable work during their unpaid "meal breaks."

122.    Thus, ERSG knew, should have known, or recklessly disregarded the fact that Finney and the other Manual Workers do not actually receive *bona fide* uninterrupted meal breaks.

123.    ERSG knew that, as Finney's and the other Manual Workers' employer, it had a duty to ensure they are not performing work that ERSG does not want performed during their unpaid "meal breaks."

124.    ERSG knew it automatically deducts 30 minutes per shift from Finney's and the Manual Worker's hours and wages for "meal breaks" regardless of whether they actually receive a *bona fide* uninterrupted meal break.

125.    And ERSG knew Finney and the other Manual Workers worked more than 40 hours in at least one workweek during the relevant period.

126.    Thus, ERSG knew, should have known, or recklessly disregarded the fact that it did not pay Finney and the other Manual Workers for all hours, including overtime hours, they perform compensable work, including the compensable work they perform during their unpaid "meal breaks."

127.    In other words, ERSG knew, should have known, or recklessly disregarded the fact that it failed to pay Finney and the other Manual Workers overtime wages for all overtime hours worked, in willful violation of the FLSA.

128.    ERSG knew it paid the Manual Workers per diems.

129.    ERSG knew these per diems constituted part of the Manual Workers' wages and compensation for work performed.

130.    ERSG knew these per diems should have been included in the Manual Workers' regular rates of pay for the purpose of calculating overtime compensation.

131.    Nonetheless, ERSG excluded the Manual Workers' per diems from their regular rates of pay.

132.    ERSG's failure to pay Finney and the other Manual Workers overtime compensation for all overtime hours worked – based on all remuneration – is neither reasonable, nor is the decision not to pay them overtime compensation for all overtime hours worked made in good faith.

133.    ERSG knows, should have known, or recklessly disregards whether its conduct described in this Complaint violates the FLSA and NYLL.

134.    ERSG knowingly, willfully, and/or with reckless disregard carried out its policies that systematically deprived Finney and the other Manual Workers of their lawfully earned wages in a timely manner and overtime wages, in willful violation of the FLSA and NYLL.

135.    In sum, ERSG's violations of the FLSA and NYLL are willful, carried out in bad faith, and have caused significant damage to Finney and the other Manual Workers.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

136.    Finney brings this action as an FLSA collective action and a class action under FED. R. CIV. P. 23.

137.    Like Finney, the other Manual Workers are uniformly victimized by ERSG's bi-weekly pay scheme, auto-deduction policy, and per diem pay scheme.

138.    Other Manual Workers worked with Finney and indicated they were paid in the same manner, performed the same or similar physical work, and were subject to ERSG's same bi-weekly pay scheme, auto-deduction policy, and per diem pay scheme.

139.    Based on his experience with ERSG, Finney is aware ERSG's practices were imposed on the other Manual Workers.

140.    Finney and the other Manual Workers have all been injured in that they have been compensated in an untimely manner and failed to receive all earned wages, including overtime wages, based on all remuneration, due to ERSG's common policies, practices, and patterns of conduct.

141.    Indeed, ERSG's company-wide policies and practices affected Finney and the other Manual Workers similarly.

142.    And ERSG benefited from the same type of unfair and/or wrongful acts as to each Manual Worker.

143.    The putative class of Manual Workers includes more than 100 members.

144.    Thus, the putative class of Manual Workers is so numerous that the joinder of all class members in one lawsuit is impracticable.

145.    The Manual Workers are similarly situated in the most relevant respects.

146.    Even if their precise job titles, exact duties, and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to their lawfully earned wages.

147.    Rather, the Manual Workers are held together by ERSG's bi-weekly pay scheme and auto-deduction policy, which systematically deprive Finney and the Manual Workers of their lawfully earned wages, including overtime wages, on a timely basis.

148.    ERSG's records reflect the wages each Manual Worker received each workweek.

149.    ERSG's records also show it failed to pay its Manual Workers their lawfully earned wages within seven days of the time they completed their work.

150.    And ERSG's records reflect that it automatically deducted 30 minutes from each Manual Workers' hours and wages each workday for so called "meal breaks."

151.    And ERSG's records reflect that it excluded the Manual Workers' per diems from their regular rates of pay.

152.    The untimely wages and overtime wages owed to Finney and the other Manual Workers can therefore be calculated using the same formula applied to the same records.

153.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to ERSG's records, and there is no detraction from the common nucleus of liability facts.

154.    Therefore, the issue of damages does not preclude class or collective treatment.

155.    And Finney's experiences are therefore typical of the experiences of the other Manual Workers.

156.    Finney has no interest contrary to, or in conflict with, the interests of other Manual Workers that would prevent class or collective treatment.

157.    Like each Manual Worker, Finney has an interest in obtaining the untimely wages, earned wages, including overtime wages, and other damages owed to them under the FLSA and New York law.

158.    Finney and his counsel will fairly and adequately represent the Manual Workers and their interests.

159.    Indeed, Finney retained counsel with significant experience in handling complex class and collective action litigation.

160.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

161.    Absent this class and collective action, many Manual Workers will not obtain redress for their injuries, and ERSG will reap the unjust benefits of violating the FLSA and New York law.

162.    Further, even if some of the Manual Workers could afford individual litigation against ERSG, it would be unduly burdensome to the judicial system.

163.    Indeed, the multiplicity of actions would create a hardship for the Manual Workers, the Court, and ERSG.

164.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Manual Workers' claims.

165.    The questions of law and fact that are common to each Manual Worker predominate over any questions affecting solely the individual members.

166.    The common questions of law and fact include:

a.   Whether ERSG paid the Manual Workers their earned wages on a less frequent than weekly basis;

b.   Whether ERSG paid its Manual Workers their lawfully earned wages on an untimely basis in violation of the NYLL;

c.   Whether ERSG engaged in a policy and practice of requiring its Manual Workers to clock out for 30 minutes a day for "meal breaks," regardless of whether they actually received a *bona fide* uninterrupted meal break;

d.   Whether ERSG knew, should have known, or had reason to know, the Manual Workers were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal breaks";

e.   Whether ERSG failed to pay its Manual Workers overtime for all overtime hours worked, including those worked "off the clock," in violation of the FLSA and NYLL;

f.   Whether ERSG paid the Manual Workers per diems that it excluded from their regular rates of pay for the purpose of calculating overtime;

g.   Whether ERSG failed to pay the Manual Workers overtime at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for hours worked in excess of 40 a week in violation of the FLSA and NYLL;

h.   Whether ERSG's decision not to pay the Manual Workers their earned wages on a weekly basis was made in good faith;

i.      Whether ERSG's decision not to pay the Manual Workers overtime for all overtime hours worked, including those worked "off the clock," was made in good faith;

j.      Whether ERSG's decision not to pay the Manual Workers overtime at the proper premium rate was made in good faith; and

k.      Whether ERSG's violations were willful.

167.    Finney knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

168.    As part of its regular business practices, ERSG intentionally, willfully, and repeatedly violated the FLSA and NYLL with respect to Finney and the other Manual Workers.

169.    ERSG's bi-weekly pay scheme, auto-deduction policy, and per diem pay scheme deprive Finney and the other Manual Workers of the lawfully earned wages on a timely basis and overtime wages they are owed under the FLSA and New York law.

170.    There are many similarly situated FLSA Collective Members who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

171.    The Manual Workers are known to ERSG and can be readily identified through ERSG's business and personnel records.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE MEMBERS)

172.    Finney brings his FLSA claims on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

173.    ERSG violated, and is violating, the FLSA by failing to pay Finney and the other FLSA Collective Members overtime wages of at least 1.5 times their regular rates of pay – based on all

remuneration – for all hours worked in excess of 40 a workweek, including hours worked "off the clock" during their unpaid "meal breaks."

174.    Throughout the relevant period, ERSG has automatically deducted 30 minutes a shift from Finney's and the other FLSA Collective Members' hours and wages for "meal breaks."

175.    But throughout the relevant period, Finney and the other FLSA Collective Members did not actually receive *bona fide* uninterrupted meal breaks.

176.    Instead, throughout the relevant period, ERSG expected and required Finney and the other FLSA Collective Members to remain on duty and perform compensable work during their unpaid "meal breaks."

177.    And, throughout the relevant period, ERSG paid Finney and the other FLSA Collective Members per diems that ERSG did not include in their regular rates of pay for the purpose of calculating overtime.

178.    Finney and the other FLSA Collective members have been harmed as a direct and proximate result of ERSG's unlawful conduct because they have been deprived of wages owed for work that they performed and from which ERSG derived a direct and substantial benefit.

179.    ERSG knowingly, willfully, and/or in reckless disregard of the FLSA carried out this pattern and practice of failing to pay Finney and the other FLSA Collective Members overtime compensation at the required premium rate for all overtime hours worked.

180.    ERSG's failure to pay Finney and the other FLSA Collective Members overtime for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

181.    Accordingly, Finney and the other FLSA Collective Members are entitled to recover the difference between the overtime wages actually paid and the overtime wages actually earned, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
### (NEW YORK CLASS MEMBERS)

182.    Finney brings his NYLL overtime claims as a class action on behalf of himself and the other New York Class Members pursuant to FED. R. CIV. P. 23.

183.    ERSG's conduct violates the NYLL and its implementing regulations, NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

184.    At all relevant times, ERSG was subject to the NYLL because ERSG was a covered "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

185.    At all relevant times, ERSG employed Finney and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

186.    The NYLL requires employers, like ERSG, to pay non-exempt employees, including Finney and the other New York Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for all hours worked over 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

187.    Finney and the other New York Class Members are entitled to overtime pay under the NYLL.

188.    ERSG violated, and is violating, the NYLL by employing non-exempt employees (Finney and the other New York Class Members) for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" during their "meal breaks." *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

189.    ERSG's unlawful conduct harmed Finney and the other New York Class Members by depriving them of the premium overtime wages they are owed.

190.    ERSG acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

191.    Thus, ERSG's NYLL violations with respect to Finney and the other New York Class Members were "willful" within the meaning of Section 198 of the NYLL. *See* NYLL § 198.

192.    Accordingly, ERSG owes Finney and the other New York Class Members the difference between the overtime wages actually paid and the overtime wages actually earned, plus interest on those amounts, penalties, and attorneys' fees and costs. *See* NYLL §§ 198(4) and 663(1).

<u>COUNT III</u>

**FAILURE TO PAY TIMELY WAGES UNDER THE NYLL**
**(NEW YORK CLASS MEMBERS)**

193.    Finney brings his NYLL claims as a class action on behalf of himself and similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

194.    Section 191 of the NYLL requires employers, like ERSG, to pay manual workers, including Finney and the other New York Class Members, their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

195.    NYLL § 191's timely payment of wages provisions and its supporting regulations apply to ERSG and protect Finney and the other New York Class Members.

196.    ERSG violated, and is violating, NYLL by failing to pay Finney and the other New York Class Members on a timely basis. *See* NYLL § 191(1)(a).

197.    ERSG's unlawful conduct harmed Finney and the other New York Class Members by depriving them of the earned wages they are owed.

198.    In violating the NYLL, ERSG acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

199.    Thus, ERSG's NYLL violations with respect to Finney and the other New York Class Members were "willful" within the meaning of NYLL § 198.

200.    In *Caul v. Petco Animal Supplies, Inc,* Judge Kovner of the Eastern District of New York held the NYLL's liquidated damages provisions are "designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

201.    Accordingly, Finney and the other New York Class Members are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## JURY DEMAND

202.    Finney demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Finney, individually and on behalf of the other Manual Workers, seeks the following relief:

      a.    An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

      b.    An Order certifying a class action pursuant to FED. R. CIV. P. 23;

      c.    An Order appointing Finney and his counsel to represent the interests of the Manual Workers;

      d.    An Order finding ERSG liable to Finney and the other FLSA Collective Members for all unpaid overtime wages owed under the

FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.      An Order finding ERSG liable to Finney and the other New York Class Members for their unpaid overtime wages owed under the NYLL plus liquidated damages in an amount equal to their unpaid wages;

f.      An Order finding ERSG liable to Finney and the other New York Class Members for liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

g.      Judgement awarding Finney and the other Manual Workers all unpaid and untimely wages, unpaid overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or NYLL;

h.      An Order awarding attorneys' fees, costs, and expenses incurred in this action;

i.      Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Dated:  October 9, 2024

Respectfully submitted,

**GATTUSO & CIOTOLI, PLLC**

By: _/s/ Ryan G. Files_
Ryan G. Files
7030 East Genesee Street
Fayetteville, New York 13066
Phone: 315-314-8000
Fax: 315-446-7521
rfiles@gclawoffice.com
fgattuso@gclawoffice.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR FINNEY AND THE MANUAL WORKERS**