UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DEVON FINNEY, Individually
and For All Others Similarly Situated,

                       Plaintiff,

v.                                        6:24-CV-1238
                                        (GTS/MJK)

ERSG US HOLDINGS INC.,

                       Defendant.

_____

APPEARANCES:                              OF COUNSEL:

JOSEPHSON DUNLAP, LLP             ANDREW DUNLAP, ESQ.
  Counsel for Plaintiff                MICHAEL JOSEPHSON, ESQ.
11 Greenway Plaza, Suite 3050
Houston, TX 77046

BOUSQUET HOLSTEIN, PLLC         RYAN G. FILES, ESQ.
  Co-counsel for Plaintiff
110 West Fayette Street, Suite 1000
One Lincoln Center
Syracuse, NY 13202

BRUCKNER BURCH PLLC            RICHARD J. BURCH, ESQ.
  Co-Counsel for Plaintiff
11 Greenway Plaza, Suite 3025
Houston, TX 77046

DUANE MORRIS LLP                 GERALD L. MAATMAN JR., ESQ.
  Counsel for Defendant             JENNIFER A. RILEY, ESQ.
190 S. LaSalle Street, Suite 370      ALEX W. KARASIK, ESQ.
Chicago, IL 60603

22 Vanderbilt, 23rd Floor              GREGORY S. SLOTNICK, ESQ.
335 Madison Avenue
New York, NY 10017

GLENN T. SUDDABY, United States District Judge

**<u>DECISION and ORDER</u>**

Currently before the Court, in this wage payment action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL" or "N.Y. Lab. L.") filed by Devon Finney ("Plaintiff") against ERSG US Holdings Inc. ("ERSG" or "Defendant"), is Defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, to strike Plaintiff's class allegations pursuant to Fed. R. Civ. P. 12(f) and Fed. R. Civ. P. 23(c)(1).  (Dkt. No. 14.)  For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

In his Complaint, Plaintiff asserts three claims on behalf of himself and all others similarly situated: (1) a claim for failure to pay overtime wages pursuant to the FLSA related to (a) automatic deductions for meal breaks that Plaintiff and other class members were required to work through, and (b) the failure to include the amount of the provided per diem in the regular rate of pay for the purposes of calculating the overtime rate; (2) a claim for failure to pay overtime wages pursuant to N.Y. Lab. L. § 190 on the same bases; and (3) a claim for failure to pay timely wages pursuant to N.Y. Lab. L. § 191 related to Defendant's action of paying Plaintiff and others similarly situated on a bi-weekly schedule as opposed to weekly as required under New York law for manual workers.  (Dkt. No. 1.)

### B.    Parties' Briefing on Defendant's Motion

#### 1.    Defendant's Memorandum of Law

Generally, in its motion, Defendant makes four arguments.  (Dkt. No. 14, Attach. 1.) First, Defendant argues that Plaintiff's claim related to the frequency of his pay (i.e., that he was

2

paid biweekly as opposed to weekly) should be dismissed because there is a split of authority in the New York courts on the issue of whether the statute contains a private right of action for such a claim, and the New York Court of Appeals is likely to resolve that split in favor of the position that no private right of action exists.  (*Id.* at 11-16.)

Second, Defendant argues that Plaintiff has failed to state a claim for unpaid overtime wages based on per diem payments because such per diem payments were properly excluded from his regular rate of pay for the purposes of calculating overtime under the terms of the applicable regulations.  (*Id.* at 16-21.)

Third, Defendant argues that Plaintiff has failed to state a claim for unpaid overtime wages based on meal break auto-deductions because (a) he has not tied his alleged work schedule to any specific time period and in fact admits that there were some weeks in which he did not work at all (and thus was not eligible for overtime during those weeks), (b) he has not alleged that Defendant directed him to work over 40 hours in any given week or that Defendant actually knew that he regularly worked through his meal break, and (c) he has not alleged how much overtime he claims he is entitled to.  (*Id.* at 21-23.)

Fourth, Defendant argues that, in the alternative, the Court should strike Plaintiff's class allegations because the individuals who comprise that putative class were all subject to different directives regarding time-keeping, meal breaks, and per diem payments based on which of Defendant's clients they worked for.  (*Id.* at 23-26.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in his opposition to Defendant's motion, Plaintiff makes six arguments.  (Dkt. No. 19.)  First, Plaintiff argues that the Court should not consider any of the extrinsic documents

3

that Defendant has submitted with its motion, because none of those documents fall into any exceptions to the rule that excludes them from consideration (e.g., they are neither incorporated by reference in, nor integral to, the Complaint).  (*Id.* at 8-9.)

Second, Plaintiff argues that he has plausibly alleged a claim pursuant to N.Y. Lab. L. § 191 because the weight of current case law suggests that a private right of action does exist for a violation of that statute.  (*Id.* at 10-14.)

Third, Plaintiff argues that he has plausibly stated a claim for overtime wage violations based on automatic meal deductions because he was required only to allege that he worked at least 40 hours in at least one work week and also worked some uncompensated time in excess of 40 hours during that week, and was not required to plead the specific workweeks in which he worked more than 40 hours, nor is he seeking compensation related to any weeks in which he did not work at all.  (*Id.* at 14-16.)

Fourth, Plaintiff argues that he has plausibly stated a claim for an overtime wage violation based on his per diem payment because whether a per diem payment is part of the employee's regular rate is an affirmative defense that cannot typically be decided on a motion to dismiss, particularly where, as here, the grounds for that defense does not appear on the face of the complaint.  (*Id.* at 17-18.)

Fifth, Plaintiff argues that his class and collective claims should not be stricken because such motion is premature given that Defendant has not demonstrated from the face of the Complaint that it would be impossible for the Court to certify the alleged class even after discovery is conducted.  (*Id.* at 19-20.)

Sixth, Plaintiff argues that, in the alternative, should the Court find any aspect of his allegations to be deficient, he should be permitted to amend the Complaint because any such deficiencies could be remedied by more fulsome pleading.  (*Id.* at 20-21.)

### 3.    Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant makes five arguments.  (Dkt. No. 21.)  First, Defendant argues that the Court may properly consider the extrinsic documents that it has submitted because Plaintiff directly cites and references those documents in his Complaint.  (*Id.* at 5-6.)

Second, Defendant argues that Plaintiff's pay frequency claim should be dismissed because, again, the New York Court of Appeals is likely to find that no private right of action exists for such a claim, and this Court is not obligated to follow the finding of any other district court.  (*Id.* at 6-9.)

Third, Defendant argues that Plaintiff has failed to allege facts to plausibly state either of his overtime claims because (a) his allegations are bare-bones and primarily consist of recitations of the legal standard without providing any specific factual allegations to plausibly suggest that he meets the relevant pleading standard applicable to such claims, and (b) Plaintiff's own allegations indicate that the per diem payments were not tied to the hours he worked.  (*Id.* at 9-10.)

Fourth, Defendant argues that Plaintiff's class allegations should be stricken because his Complaint does not demonstrate that a sufficient number of potential class members were subject to the same terms and conditions of employment that he alleges were in violation of the law.  (*Id.* at 10-11.)

Fifth, Defendant argues that Plaintiff should not be granted leave to amend the Complaint because any attempt to rectify the deficiencies in the Complaint would be futile. (*Id.* at 11-12.)

## II.   GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

7

pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

8

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

9

### III.    ANALYSIS

> ### A.    Whether Plaintiff Has Sufficiently Pleaded His Claims Pursuant to the FLSA and the New York Labor Law

After careful consideration, the Court *generally* answers the above question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law, *see, supra,* Part I.B.2 of this Decision and Order, to which it adds the following analysis.  However, because of Plaintiff's failure to provide concrete factual allegations regarding the time period for which he worked for Defendant in New York, the Court finds that his claims pursuant to the FLSA and New York Labor Law merit dismissal with prior leave to correct this pleading deficiency in them.

"'In order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'"  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 114 [2d Cir. 2013]).  "The pleading standard is satisfied . . . if the plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work, so that they were eligible for overtime during *every* week in which they worked that regular schedule."  *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 117 (2d Cir. 2023).

As an initial matter, the Court finds that it may not consider either the declaration of Rachael Peterson or the ERSG Handbook submitted with Defendant's motion, as neither of those

---

defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

documents are either integral to the Complaint (as there is no indication Plaintiff relied upon those when drafting the Complaint) or incorporated by reference.  The Court may, however, consider the Terms of Employment for ERSG Personnel document submitted with that motion (which is a copy of the Agreement signed by Plaintiff on August 10, 2021) because Plaintiff explicitly relies upon and draws from that Agreement in the Complaint.  (Dkt. No. 1, at ¶ 70.)

More importantly, there is a concerning ambiguity in Plaintiff's Complaint that affects all of his claims: namely, the allegations in the Complaint are not clear regarding when precisely Plaintiff performed work for Defendant in New York.  For example, in one allegation, he states, "Finney worked for ERSG as a Quality Control Technician from approximately August 2021 until December 2022 in New York and Iowa."  (Dkt. No. 1, at ¶ 59.)  Yet in the very next allegation, he states, "ERSG employed Finney in Otsego County, New York from approximately April 2021 to October 2021."  (*Id.* at ¶ 60.)  In yet another allegation, he states, "ERSG failed to timely pay Finney his earned wages not later than seven days after he earned such wages, as required by NYLL § 191(1)(a), for every other week he worked in New York, from approximately April 2022 through October 2022."  (*Id.* at ¶ 71.)  To make matters even more confusing, in his opposition memorandum of law, Plaintiff asserts that the Complaint "provides his dates of employment with ERSG (from approximately April 2021 through December 2022), which is in fact not the same as any of the date ranges alleged in the Complaint.  (Dkt. No. 19, at 16.)  The Court notes that the Employment Agreement signed by Plaintiff indicates that his expected start date was August 11, 2021, rendering any allegation that the period extends back to April 2021 implausible.  (Dkt. No. 14, Attach. 4, at 7.)  Yet even with that clarification, it

11

remains unclear whether the relevant period at issue ends in October 2021, October 2022, December 2022, or some other date.

The Second Circuit has indicated that, "in the context of a motion to dismiss, district courts in this Circuit have therefore found that complaints sufficiently allege employment when they state where the plaintiffs worked, outline their positions, and *provide the dates of employment.*" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013) (emphasis added). Because Plaintiff has not plausibly alleged what the actual date range of his employment was, the Court finds that his claims must be dismissed. *See Novikov v. 141 Mansion Ave. Restaurant LLC*, 25-CV-1581, 2026 WL 274392, at *3 n.2 (E.D.N.Y. Jan. 29, 2026) (noting that "[t]he NYLL's definition of 'employer' is 'nearly identical' to that of the FLSA, and 'the analysis of the employment relationship under both statutes is based on the same factors'") (quoting *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 247 [E.D.N.Y. 2024]). However, given the easily fixable nature of this deficiency, the Court will permit Plaintiff to file a motion to amend the Complaint to more clearly allege the dates of his employment. Because the Court expects an Amended Complaint will be forthcoming to correct this deficiency (given that Plaintiff has specifically requested leave to amend should the Court find any portion of his Complaint deficient), it will still consider the merits of Defendant's other arguments in the interest of judicial efficiency.

### 1.    Uncompensated Meal Breaks

The Court finds that the allegations in the Complaint plausibly allege that Plaintiff worked more than 40 hours in every week during which he worked his regular schedule. Specifically, Plaintiff has alleged that he "worked approximately 12 hours a day for 6 days a

week (72 hours a workweek)." (Dkt. No. 1, at ¶ 64.)  He further alleges that he "typically worked a rotating schedule of 6 weeks on and one week off." (*Id.* at ¶ 65.)  The Court construes these allegations together as alleging that Plaintiff worked 72 hours per week during the six weeks he was "on," and worked no hours on the week that he was "off."  Notably, there is nothing in Plaintiff's allegations to suggest that the hours he worked per day and per week varied from week to week, other than when he had his "off" week.  As a result, Plaintiff's allegations clearly pass the threshold of plausibly suggesting that he worked more than 40 hours during the weeks when he was "on."

The Court rejects Defendant's argument that the allegations are somehow legally deficient because Plaintiff has indicated that some weeks during the relevant period he did not work over 40 hours (i.e., his "off" weeks).  The allegations make it very clear that his typical schedule consisted of six weeks when he was "on" and one week when he was "off," and it is therefore not at all difficult to discern for which weeks Plaintiff is claiming he worked in excess of 40 hours.  In this way, the situation here differs from that in *Mota v. Abalon Exterminating Co., Inc.*, 22-CV-7602, 2024 WL 4202687, at *4-5 (S.D.N.Y. Sept. 16, 2024), which was relied upon by Defendant.  In that case, the court found that allegations suggesting that there were some weeks in which the plaintiffs worked *exactly* 40 hours rendered it impossible to tell which weeks the plaintiffs worked more than 40 hours and which weeks they did not.  *Mota*, 2024 WL 4202687, at *5-6.  Here, as already discussed, Plaintiff has clearly delineated which weeks he worked in excess of 40 hours and which weeks in which he did not work at all.

Nor is there any reason to believe that Plaintiff is attempting to seek unpaid overtime compensation for meal breaks during his "off" weeks, as it would defy logic to assert that he

13

worked through a meal break during weeks when he was not working at all.  Because Plaintiff has alleged facts to plausibly allege that he worked in excess of 40 hours during his "on" weeks (which, again, he specifically alleges occurred for six weeks before an "off" week), he has met the pleading threshold to show that he worked in excess of 40 hours in every week in which he worked his regular schedule (i.e., those weeks during which he was "on").  Moreover, because he has plausibly alleged that he worked well in excess of 40 hours in every "on" week, the alleged meal breaks (which he alleges constituted 30 minutes per day of uncompensated time) during those weeks would clearly qualify as uncompensated time in excess of 40 hours.

Specifically, Plaintiff alleges the following facts related to the meal breaks: (a) Defendant "automatically deducts 30 minutes a day from Finney's and Manual Workers' hours for unpaid so-called 'meal breaks'"; (b) despite using this auto-deduction policy, Defendant did not actually provide a bona fide meal break, but instead "required Finney and the other Manual Workers to remain on-duty and perform compensable work during their unpaid 'meal breaks'"; (c) "because of these work interruptions, Finney and other Manual Workers are not free to engage in personal activities during their unpaid 'meal breaks'" but instead "are forced to substantially perform their regular duties and responsibilities" during those unpaid breaks; (d) Plaintiff and the other workers "routinely spend their unpaid 'meal breaks' performing work for ERSG's—not their own—predominant benefit"; and (e) Defendant "knew, or should have known," that its employees were performing unpaid work during their meal breaks, that employees were interrupted by work during attempted meal breaks, that employees were not completely relieved of all duties during their meal breaks, that meal breaks are less than 30 consecutive minutes, that employees are not free to engage in personal activities on their meal

14

breaks because of work interruptions, and that employees predominantly spend their meal breaks performing their regular work duties. (Dkt. No. 1, at ¶¶ 11-15, 85-98.) Although these allegations are certainly bordering on conclusory (particularly related to Defendant's knowledge), they do plausibly suggest that Defendant was made to work uncompensated time, and, as already discussed, such uncompensated time would necessarily have to have occurred during a week when he worked in excess of 40 hours.

Lastly, contrary to Defendant's argument, Plaintiff was not required to allege a specific number of hours per week he is alleging are uncompensated; all that is required is that he allege "40 hours of work in a given workweek as well as *some* uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114 (emphasis added); *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work *to support a reasonable inference that they worked more than forty hours in a given week*.") (emphasis added). Because Plaintiff always worked more than 40 hours in his "on" weeks, *any* uncompensated time he spent working during a meal break during those weeks is a proper subject of his claims, and because he has plausibly alleged that he was required to work through at least some portion of his meal breaks, his allegations meet the pleading standard here without requiring him to specify exactly how much time per week he was required to work uncompensated; having met the threshold stated in *Lundy*, such specifics are more appropriately to be determined through discovery.

For the above reasons, the Court finds that Plaintiff has plausibly stated claims for uncompensated overtime related to his meal breaks.

15

### 2.    Failure to Include Per Diem in Regular Rate of Pay

As to the alleged failure to include the amount of the per diem payment in the regular rate of pay for the purpose of calculating the overtime rate, Plaintiff has alleged that (a) "ERSG pays Finney and the other Manual Workers non-discretionary per diems," (b) "ERSG fails to pay Finney and the other Manual Workers these per diems on days they cannot work due to inclement weather," and (c) the amount of such per diem is "approximately $120 a day." (Dkt. No. 1, at ¶¶ 63, 100-01.)

Section 207(a)(1) of Title 29 of the United States Code states that "[e]xcept as otherwise provided, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The "regular rate" is "deemed to include all remuneration for employment paid to, or on behalf of, the employee," but this definition does contain exceptions, which is noted to be an exhaustive list that is interpreted narrowly against the employer. 29 U.S.C. § 207(e); *Beardsley v. Cnty. of Saratoga*, 23-CV-1641, 2026 WL 265997, at *9 (N.D.N.Y. Feb. 2, 2026) (Brindisi, J.); *Ayers v. SGS Control Servs., Inc.*, 03-CV-9077, 2007 WL 646326, at *9 (S.D.N.Y. Feb. 27, 2007).

One of these exceptions is "reasonable payment for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer," along with "other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). The regulation related to

16

this exception includes as one of its illustrative (and explicitly not exhaustive) examples "[t]he actual or reasonable approximate amount expended by an employee, who is traveling 'over the road' on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business." 29 C.F.R. § 778.217(b)(3) and (5).  Further, the regulations discuss that "other similar payments" which are excluded from the regular hourly rate are those "which are not made as compensation for [the employee's hours of employment" and which "do not depend on hours worked, services rendered, job performance, or other criteria that depend on the quality or quantity of the employee's work."  29 C.F.R. § 778.24(a).

As an initial matter, Plaintiff argues that there is a statutory presumption that any sort of remuneration is included in the regular rate calculation.  (Dkt. No. 19, at 17 [citing *Crespo v. Cnty. of Monroe, New York*, 10-CV-6590, 2015 WL 2406112, at *7 (W.D.N.Y. May 20, 2015)]).  In *Madison v. Resources for Human Develp., Inc.*, 233 F.3d 175 (3rd Cir. 2000), which is cited in *Crespo*, the Third Circuit states that because "the FLSA expressly provides the regular rate of pay 'shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee' unless it falls under a specific exemption," "there is a statutory presumption here that remuneration in any form is included in the regular rate calculation," and "the burden is on the employer to establish that the remuneration in question falls under an exemption."  *Madison*, 233 F.3d at 187.  Other circuits have come to the same conclusion specifically as to the exceptions in 29 U.S.C. § 207(e).  *See, e.g., Clarke v. AMN Servs., LLC*, 987 F.3d 848, 853 (9th Cir. 2021) ("Here, AMN, as the employer, bears the burden of establishing that its per diem payments qualify as an exemption from the regular rate of pay under the FLSA.").  Further, the Supreme

17

Court has noted that "the general rule" is that "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974); *see also Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72, 81 (2d Cir. 2015) ("The application of an exemption to the FLSA is an affirmative defense."). In light of this review of the legal landscape, the Court agrees with Plaintiff that whether the per diem here meets one of the enumerated exceptions in 29 U.S.C. § 207(e) is a question on which Defendant bears the burden.

The relevant consideration is therefore whether the grounds for such an affirmative defense can be found on the face of the Complaint. To the extent that Plaintiff's allegation that he did not receive the per diem on days when he could not work due to inclement weather could be shown to be inaccurate upon a consideration of the evidence,[2] the Court is required to accept that allegation as true on this motion to dismiss in the absence of any properly considered contradictory evidence. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (noting that "generalized allegations that may prove false at trial are not necessarily the basis for dismissal at the pleading stage"). Notably, the Agreement signed by Plaintiff indicates that "[w]here Per Diem is offered as part of the package, you are eligible for these payments only when you are in the field and staying away from your primary residence for the night unless otherwise indicated in the assignment schedule." (Dkt. No. 14, Attach. 4, at 6.) In the section of the Agreement labeled as the Personal Assignment Schedule, it is noted related

---

[2] Notably, contrary to Plaintiff's allegation, the submitted declaration of Ms. Peterson (which, again, the Court gives no weight in its decision on this motion because it does not meet any of the conditions for extrinsic evidence on a motion to dismiss) states that Plaintiff would still receive his per diem even on days he did not work due to weather, as long as he met certain conditions. (Dkt. No. 14, Attach. 2, at ¶ 11.)

18

to the per diem that "$120 paid on all days you are required to be in market overnight. While on rotation you will not receive the M&IE portion of per diem and a $90 lodging will be paid for a maximum of 4 days per rotation." (*Id.* at 7.) These statements do not appear to clearly contradict his allegation, because they do not indicate that he would be required to remain in the market on days when he is not able to work due to weather. Thus, for the purposes of this motion, Plaintiff's allegations plausibly suggest that his receipt of the per diem was at least somewhat tied to the work he performed and does not so obviously meet one of the enumerated exceptions that his claim can be dismissed based on the face of his Complaint.

Under these circumstances, the Court finds that dismissal of Plaintiff's claim related to the per diem payment would be inappropriate on this motion to dismiss. *Cf. Conklin v. United States Postal Serv.*, 23-CV-7122, 2024 WL 4349452, at *3 (S.D.N.Y. Sept. 30, 2024) ("Although affirmative defenses are often inappropriate at the motion to dismiss stage, and 'a plaintiff is not required to plead the absence of such a defense,' an affirmative defense 'may be raised in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.'") (quoting *Chen*, 798 F.3d at 81).

**B.      Whether the Court Should Dismiss Plaintiff's Claim Brought Pursuant to N.Y. Lab. L. § 191**

The Court answers the above question in the negative for the reasons stated in its prior decision in *Euson v. TRC Engineers, LLC*, 5:24-CV-1168, 2025 WL 2591847 (N.D.N.Y. Sept. 8, 2025) (Suddaby, J.). Specifically, notwithstanding the Court's opinion regarding how the New York Court of Appeals would be likely to resolve the split of authority on this issue, amendments made to N.Y. Lab. L. § 198(1-a) approved on May 6, 2025, resolve the issue by indicating that such a private right of action does exist. *See Euson*, 2025 WL 2591847, at *6-9 (noting that the

19

amended statute now directly references what liquidated damages can be granted for a violation

of Section 191) (citing *Garcia v. New Force Constr. Corp.*, 23-CV-2336, 2025 WL 2015158, at

*14-15 [E.D.N.Y. July 18, 2025] [Report-Recommendation]; *Lopez v. J&L Sky Contrs. Corp.*,

24-CV-7661, 2025 WL 1859690, at *17 [E.D.N.Y. July 7, 2025] [Report-Recommendation];

*Garzon v. Building Servs. Inc.*, 24-CV-5429, 2025 WL 1871171, at *10 [S.D.N.Y. July 2, 2025],

Report-Recommendation adopted by 2025 WL 2062741 [S.D.N.Y. Jul. 23, 2025]).  Since that

decision, additional courts have agreed that the amendment to N.Y. Lab. L § 198(1-a) provides a

private right of action for violations of N.Y. Lab. L. § 191(1)(a).  *See, e.g., DeDyn v. Gintzler

Graphics, Inc.*, 23-CV-1291, 2026 WL 221434, at *7 (W.D.N.Y. Jan. 28, 2026); *Giacotti v.

Pizzarotti LLC*, 23-CV-3457, 2025 WL 2607606, at *20 (S.D.N.Y. Sept. 9, 2025).

  As a result, the Court finds that a private right of action exists for Plaintiff to assert this

claim, and therefore denies Defendant's motion to dismiss it on that ground.

  **C.  Whether Plaintiff's Class and Collective Claims Should Be Stricken**

  After careful consideration, the Court answers the above question in the negative for the

reasons stated in Plaintiff's memorandum of law.  *See, supra,* Part I.B.2 of this Decision and

Order.  To those reasons, the Court adds the following analysis.

  Defendant lastly argues that the Court should strike Plaintiff's class allegations because

Plaintiff has not plausibly alleged that any of the other putative class members worked for the

same client or at the same job site that he did, or that they were actually subject to the same

policies that he alleges violated the FLSA and New York Labor Law.  (Dkt. No. 14, Attach. 1, at

23-26.)

Although a party is permitted to strike class claims in a complaint before discovery, "[i]n this Circuit, . . . 'motions to strike are generally looked upon with disfavor.'" *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 [S.D.N.Y. 2012]).  This is because "they 'require a reviewing court to preemptively terminate the class aspects of … litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 357 (S.D.N.Y. 2020) (quoting *Kassman*, 925 F. Supp. at 462).  "Motions to strike, 'however, may be entertained if the inquiry would not mirror the class certification inquiry and if the resolution of the motion is clear.'" *Duran*, 450 F. Supp. 3d at 357 (quoting *Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 172 [S.D.N.Y. 2019]); *see also Katz v. Esurance Property and Casualty Ins. Co.*, 24-CV-0955, 2025 WL 750937, at *15 (E.D.N.Y. Mar. 10, 2025) (noting that "district courts in this Circuit have frequently found that a determination of whether Rule 23 requirements are met is more properly deferred to the class certification stage, when the court has before it a more complete factual record from which to make its determination") (quoting *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 53 [E.D.N.Y. 2017]).

Defendant's argument regarding meal breaks is notably based on a document it submitted with its motion that the Court has already determined it may not properly consider on a motion pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 14, Attach. 1, at 24-25.)  Further, to the extent that Defendant argues that no allegations support a plausible suggestion that any of the other class members were subject to the specific per diem arrangement outlined in his Agreement, (*Id.*

at 25-26), Plaintiff does notably allege that "ERSG also subjects Finney and the other Manual Workers to its per diem pay scheme" through which it pays them a "non-discretionary per diem," (Dkt. No. 1, at ¶¶ 99-100.)  The fact that the specific terms of the per diem are outlined in Plaintiff's personal Agreement does not in any way undermine Plaintiff's allegation that the other class members were subject to the same sort of per diem terms.

Given that Plaintiff has alleged that the other class members were subject to the same terms related to meal breaks, per diem payments, and payment schedule, and that the Court must accept those allegations as true on this motion, whether there might be material differences between Plaintiff's situation and that of the other class members is a question that would be best considered after discovery.  This is certainly not a case in which the Complaint itself demonstrates that a class action cannot be maintained, a fact which is only emphasized by Defendant's reliance on extrinsic materials to make its argument.  Moreover, Defendant's bases for seeking to strike the class claims (i.e., that there is an insufficient factual commonality between Plaintiff and the other putative class members or an insufficient number of similar class members) mirror the considerations of the class certification inquiry, and thus his arguments are better addressed at the class certification stage after discovery.

The Court therefore declines to strike Plaintiff's class allegations at this juncture (leaving that issue open to future challenge, of course, should it be warranted once more information is available).

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 14) is **GRANTED in part** and **DENIED in part**; and it is further

22

**ORDERED** that the claims pursuant to the Fair Labor Standards Act and the New York Labor Law in Plaintiff's Complaint (Dkt. No. 1) **shall be <u>DISMISSED</u>** without further order of the Court, **UNLESS, within THIRTY (30) DAYS** from the entry of this Decision and Order, Plaintiff files an Amended Complaint curing the pleading defects identified above in Part III.A. of this Decision and Order).

Dated: March 19, 2026
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

23